IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STONINGTON INSURANCE COMPANY | : | CIVIL ACTION |
| | : | |
| v. | : | No. 09-5765 |
| | : | |
| PETER G. DARDAS | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                             **July 20, 2010**

Defendant Peter G. Dardas was injured while operating a tow truck insured by Plaintiff Stonington Insurance Company and seeks coverage from Stonington. The parties filed cross-motions for summary judgment, each asserting there are no disputed material facts as to whether a Stonington insurance policy owned by Dardas's employer covers injuries Dardas suffered in a March 21, 2007 accident. Because Dardas's injuries are covered by his employer's Stonington motor vehicle policy, summary judgment is granted in favor of Dardas and against Stonington.

**FACTS**

The facts of this case are not in dispute. On March 21, 2007, the date of the accident, Dardas was employed by Berks-Mont Towing & Recovery and was acting within the course and scope of his employment. Dardas was driving a tow truck owned by Berks-Mont and insured under a Pennsylvania motor vehicle insurance policy issued by Stonington (the Policy). He was towing a box truck owned by Akins Auto Sales and traveling on the Pennsylvania Turnpike.

As Dardas drove, a fire developed in the engine of his tow truck and the cab began to fill with smoke. He pulled over and attempted to extinguish the fire, but he was unsuccessful. As Dardas attempted to extinguish the flames, another driver, Omar Ortiz, approached Dardas and offered to

1

help him remove the box truck from the bed of the Berks-Mont tow truck to save the box truck from damage. Dardas accepted his offer.

The two men decided to use Ortiz's tow truck to pull the box truck off of the wheel lift of the Berks-Mont tow truck. Dardas unlocked the box truck from the Berks-Mont tow truck by removing the safety straps. He prepared to enter the box truck through the driver's door so he could steer the truck and apply the brakes, if necessary, while Ortiz pulled the box truck off of the Berks-Mont tow truck. As Dardas opened the box truck's door, Ortiz, without warning, began pulling the box truck off of the tow truck's wheel lift and onto the shoulder of the highway. As the box truck moved toward Dardas, the open driver's door struck him in the leg. Dardas suffered serious injuries, including a massive hematoma in his leg.

Despite his injuries, Dardas continued removing items from the tow truck until a fire marshal instructed him to stop retrieving items from the vehicle. After the accident, Dardas applied for and received workers' compensation benefits under coverage provided by Berks-Mont. He also presented a claim to Stonington for Underinsured Motorist Benefits under the Policy and filed suit against Ortiz's towing company, Noah Towing, Inc. Stonington denied Dardas's claim and filed a complaint seeking a declaratory judgment that Dardas's injuries are not covered by the Policy because he was not occupying the truck under the policy's definition.

**DISCUSSION**

The parties filed cross-motions for summary judgment asking this Court to declare whether Dardas is covered by the Stonington policy. This Court "may declare the rights and other legal relations" between Stonington and Dardas. 28 U.S.C. § 2201(a). "The standard for granting summary judgment on a request for a declaratory judgment is the same as for any other type of

2

relief." *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 210 n.12 (3d Cir. 2002) (citations omitted). Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In reviewing a motion for summary judgment, a court "must view all evidence and draw all inferences in the light most favorable to the non-moving party." *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008) (citations omitted). "This rule is no different when there are cross-motions for summary judgment."[1] *Id.*

The moving party "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). In the instant case, the parties have stipulated there are no genuine issues of material fact, and they ask this Court to declare whether Dardas's injury is covered by the Stonington motor vehicle insurance policy issued to Berks-Mont, Dardas's employer.[2]

---

[1] "Cross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified." *Id.* (citing *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). Thus, this Court will rule on each party's motion on an individual and separate basis.

[2] When an insurance policy's terms and conditions are not in dispute, interpretation of the policy's coverage is a question of law. *Pac. Indemnity Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985).

3

Stonington argues Dardas's injury is not covered by the Pennsylvania Underinsured Motorist Coverage (UIM) section of the Policy because he was not "occupying" the insured vehicle at the time of the accident. The UIM section limits coverage to individuals "occupying" a covered motor vehicle.[3] Dardas contends he was "occupying" the vehicle and thus qualifies as an "insured" under the policy. The parties agree the tow truck Dardas drove is a "covered vehicle" under the Policy. The sole issue, therefore, is whether Dardas occupied the Berks-Mont tow truck at the time of his injury.

Under Pennsylvania law, interpretation of the word "occupying" in motor vehicle insurance policies "focuses upon whether the person claiming benefits was performing an act (or acts) which is (are) normally associated with the immediate 'use' of the auto." *Utica Mut. Ins. Co. v. Constriciane*, 473 A.2d 1005, 1009 (Pa. 1984).[4] The *Utica* court held that "when a person is engaged in the lawful use of an insured vehicle, he will be considered to be 'occupying' that vehicle within the meaning of the policy" when the following four factors are met:

> (1) there is a causal relation or connection between the injury and the use of the insured vehicle;
> (2) the person asserting coverage [was] in a reasonably close geographic proximity to the insured vehicle, although the person need not actually be touching it;
> (3) the person [was] vehicle oriented rather than highway or sidewalk oriented at the time [of injury]; and
> (4) the person [was] engaged in a transaction essential to the use of the vehicle at the time.

*Utica*, 473 A.2d at 1009 (citations omitted).

---

[3] The Policy defines "occupying" as "in, upon, getting in, on, out or off." Compl. ¶ 9.

[4] In *Utica*, the insurance policy defined "occupying" as "in or upon or entering into or alighting from." This term definition is substantially similar to the definition included in the Policy.

4

The *Utica* court emphasized that a liberal interpretation of the term "occupying," is required in light of the public policy underlying Pennsylvania's Uninsured Motorist Act.[5] *Utica*, 473 A.2d at 1009.

Stonington concedes Dardas has met the second prong of the test, as he was in reasonably close geographic proximity to the Berks-Mont tow truck at the time of his injury, but argues he cannot meet the other three *Utica* factors.

Stonington contends the first factor is not met because there was no causal connection between Dardas's use of the Berks-Mont tow truck and the injury he suffered when he was struck by the door of the box truck. Stonington argues no causal connection existed because "by the time the injury-producing event played out, the Berks-Mont truck was engulfed in flames and was no longer operational." Pl.'s Mot. for Summ. J. at 3. Stonington asserts the extensive damage to the tow truck, and Dardas's resulting inability to drive the truck compels the conclusion Dardas was not using the truck at the time of his injury. Dardas contends, in unloading the box truck which the tow truck carried, he was engaged in a transaction essential to his use of the vehicle because his use of the tow truck was not limited to driving the truck from one destination to another, but also included retrieving, transporting, and unloading disabled vehicles, and ensuring such vehicles are safely transported.

In *Utica*, the insured individual was involved in a minor accident which did not cause his injury. An officer responding to the scene directed the insured to bring his license and owner's card from his vehicle. While the insured stood next to the police car, he was struck by a passing

---

[5] This Act was "intended to protect those 'persons who while lawfully using the highways themselves suffer grave injuries through the negligent use of those highways by others.'" *Utica*, 473 A.2d at 1009.

uninsured motorist and killed. The *Utica* court held the decedent insured was occupying the vehicle at the time of his injury because, following his accident "he was required by law to stop his vehicle and exchange [vehicle] information" and he "was directed by [a police] officer to bring [his] information up to the police car." 473 A.2d at 1009. The court held it was only the mandates of law which caused the insured to leave physical contact with his vehicle, and stated it was the decedent's "use of the vehicle which precipitated the whole unfortunate series of events." *Id*. *Utica* thus established the general principle that an insured who is engaged in an activity related to the use of his car is "occupying" the car even though he may not be in the vehicle or physically touching it.

*Utica*'s rationale has been broadly construed, and is not limited to those insureds who are injured after exiting their vehicles in compliance with a traffic law or a police officer's directive. The Third Circuit has held a tow truck driver injured while walking from his tow truck to a disabled vehicle was "occupying" his tow truck for the purposes of his insurance coverage. *Lynn v. Westport Ins. Corp.*, 158 Fed. Appx. 438 (3d Cir. 2007). The *Lynn* court stated "[i]t is part of the duties of a tow truck driver to exit the truck and aid [a] disabled vehicle . . . ." *Lynn*, 158 Fed. Appx. at 441.

Dardas's vehicle was equipped for such loading and unloading operations and his employment duties as a tow truck driver obligated him to engage in such operations. On the day of his injury, Dardas was driving his employer's tow truck and was hauling a customer's box truck, which Dardas had been charged with safely transporting to its destination. Dardas's journey was interrupted by an engine fire which made driving the tow-truck unsafe. He pulled over and immediately took action to save the box truck from fire damage. He unhooked the box truck from the wheel lift system of his tow truck and was actively engaged in unloading the box truck when he was injured. Because Dardas's job duties obligated him to load and unload the box truck from the

6

tow truck, there is a clear causal connection between the Berks-Mont tow truck and Dardas's injuries. Dardas's "use" of the tow truck is not limited to driving the truck, but extends to other tasks inherent to the towing operation, including loading and unloading vehicles onto the truck. *See Selective Ins. Co. of Am. v. Jaskoloka*, 292 F. Supp. 2d 624, 630 (M.D. Pa. 2003) (finding a causal connection between a township employee's injury and her use of an insured dump truck when her job required her to load road-side brush into the back of a truck and she was injured while loading brush into her truck).

Stonington's insistence the tow truck was incapable of being driven at the time of Dardas's injury does not change this analysis. First, while the truck may have been rendered immobile by the fire in the front cabin, the fire did not prevent Dardas from attempting to unload the tow truck's cargo. Second, *Utica* does not include a requirement that a vehicle is capable of driving away from the scene of a driver's injury in order to find occupancy. This Court will not impose such a requirement, and *Utica* rejects such a narrow interpretation of the definition of occupancy. Thus, the first *Utica* factor is established.

The third prong of the *Utica* test is the injured person "must be vehicle oriented rather than highway or sidewalk oriented at the time" of injury. *Utica*, 473 A.2d at 1009. A person is vehicle oriented if he is "engaged in activities directed towards or in preparation for entering his vehicle." *Petika v. Transcon. Ins. Co.*, 855 A.2d 85, 89 n.2 (Pa. Super. Ct. 2004). Stonington argues Dardas has not met the third *Utica* factor because he was not vehicle-oriented when the accident occurred. Stonington suggests Dardas was highway-oriented when injured because he was not "duty-bound to salvage the box truck," and rather acted as a personally disinterested Good Samaritan in his efforts to unload the box truck from the back of his employer's tow truck. Pl.'s Mot. for Summ. J. at 6. In

7

response, Dardas argues he was vehicle-oriented at the time of his injury because he was engaged in actions which were an essential part of his job as a tow-truck driver, and he was obligated by his occupation to take reasonable steps to salvage the truck.

In *Merchants Mut. Ins. Co. v. Benchoff*, No. 09-418, 2010 U.S. Dist. LEXIS 53341 (W.D. Pa. May 10, 2010), a district court conducted a thorough analysis of Pennsylvania case law regarding vehicle-orientation under the *Utica* test. The *Benchoff* court held the key distinction between vehicle orientation and highway orientation "is the type of activity engaged in by the individual at the time of the accident and the individual's purpose for being outside the vehicle." *Benchoff*, 2010 U.S. Dist. LEXIS 5334, at *41. The *Benchoff* court observed that "[w]here the individual was engaged in an activity normally associated with or essential to the use of the insured vehicle, [Pennsylvania] courts have uniformly held that the individual was vehicle oriented." *Id.* In the instant case, Dardas was engaged in unloading a box truck from his tow truck. This is an activity normally associated with the use of a tow truck and which is essential to a tow truck's operations. Dardas was outside the vehicle because of the engine fire in his tow truck and was required by law and the dictates of common sense to pull over and exit his vehicle.

If Dardas was acting as a Good Samaritan, he would not have been vehicle-oriented under the *Utica* test. *See Downing v. Harleysville Ins. Co.*, 602 A.2d 871, 874 (Pa. Super. Ct. 1992) (holding that a plaintiff who stopped on the highway to help another motorist change a flat tire became highway oriented when he walked away from his vehicle and towards the other vehicle); *see also Aetna Cas. and Sur. Co. v. Kemper Ins. Co.*, 657 F. Supp. 213 (E.D. Pa. 1987) (holding claimants became "highway-oriented" when they left their own vehicle to help another motorist because their actions were not essential to use of their car). If a motorist is not acting as a Good

8

Samaritan, however, and is acting in accordance with his employment obligations, he is vehicle oriented. *See Lynn*, 258 Fed. Appx. at 442; *Jaskoloka*, 292 F. Supp. 2d at 629 ("Whether motivated to comply with a statute or earn a paycheck, each of these individuals had compelling reasons to be outside their vehicles.").

In *Lynn*, the claimant was a tow truck driver sent by his employer to the side of a freeway to assist a motorist with a disabled vehicle. Once Lynn arrived, he realized he would be unable to tow the vehicle with his truck and called a coworker to the scene. When his coworker arrived, he asked for Lynn's help in loading the vehicle onto another flat bed truck. After Lynn left his truck and as he walked toward the disabled vehicle he was struck by the side mirror of a passing vehicle. The *Lynn* court distinguished Lynn's situation from the Good Samaritan in *Downing*, and held that Lynn's occupation as a tow truck driver, "whose job it was to respond to stranded motorists," was a "key difference in the facts." *Lynn*, 258 Fed. Appx. at 442.

Dardas asserts his duties as a tow-truck driver "compelled him to preserve the vehicle he was towing, attempt to extinguish the fire on the tow truck and to retrieve valuables from its cab and compartments." Def.'s Mot. for Summ. J., ¶ 19. There is nothing to suggest Dardas was acting as a disinterested Good Samaritan during his attempt to unload the box truck from his tow truck. Stonington argues Dardas must have been a Good Samaritan because there is no evidence Dardas was duty-bound to salvage the box truck. This argument is without merit because Dardas's motivation to salvage the box truck was his belief his employer expected him to take all reasonable steps to safeguard the cargo he carried.[6] It is not surprising, given the exigencies of the situation, that

---

[6] Dardas stated he tried to save the box truck and was mindful that the fire on the tow truck could destroy between $10,000 to $15,000 worth of equipment, not including the cost of the box truck. Statement under Oath of Peter Dardas, at 58, October 6, 2009. Dardas also testified he entered the burning cab to attempt to salvage other property of his employer, including flashlights, vests

9

Dardas did not consult his employer before removing the box truck or receive explicit instructions to remove the box truck. Moreover, such explicit instructions are not required, as Dardas's actions were oriented toward the vehicle he drove. These circumstances are completely different from those present in *Downing*, where a insured stopped on the highway to assist another motorist and a stranger and walked away from his own vehicle. Here, Dardas never walked away from his vehicle. He similarly did not abandon his obligation to safeguard his employer's property and unload the cargo he was charged with safely transporting. *See St. Paul Fire & Marine Ins. Co. v. Rhein*, No. 06-4565, 2008 U.S. Dist. LEXIS 57536, at *7 (E.D. Pa. 2008) ("[T]he professional duties of a driver provide reasonable notice to an insurance company as to how the insured vehicle will be used.") (citations omitted). *See also Benchoff*, 2010 U.S. Dist. LEXIS 53341, at *42 (holding a tow truck driver injured while attempting to tow a family member's car was vehicle-oriented and explaining the insured's personal reasons for using the van was a "distinction without a difference" when the insured was lawfully driving the work van and was permitted to use it for personal reasons).

Furthermore, at the time of his injury, Dardas was standing immediately behind his tow truck and was working to unload a vehicle from the wheel lift at the rear of the truck.[7] Here, as in *Utica*, while the tow truck did not cause Dardas's injuries, it was "the use of the [tow truck] which

---

and tool kits because he was "trying to save as much stuff as he could" to save his employer from higher insurance costs. *Id.* at 64-65.

[7] The box truck's front wheels were resting on the T-bar of the tow truck's wheel lift and held in place by brackets on the tow truck. The rear wheels of the box truck were on the ground. Dardas removed safety straps on the box truck in order to pull it off of the tow truck and was preparing to enter the box truck's driver's compartment when the box truck was pulled off the back of the tow truck.

precipitated the whole unfortunate series of events." *Utica*, 473 A.3d at 1009. Thus, the third factor of the *Utica* test is met, Dardas was vehicle-oriented at the time of his injury.

Finally, Stonington argues Dardas has not met the fourth *Utica* factor as he has not shown he was engaged in a transaction essential to the use of his vehicle at the time of his injury. Having concluded Dardas was vehicle oriented at the time of his accident and was using the insured vehicle to unload the box truck, it is clear Dardas was engaged in a transaction essential to the use of his tow truck when injured. Because Dardas has met the four *Utica* criteria, he was "occupying" the insured tow truck at the time of his injury.

Stonington next argues Dardas's eligibility for recovery under the UIM section of the Policy is limited because Dardas has received workers' compensation benefits for his injury.[8] Stonington does not detail the extent to which it contends Dardas's recovery is limited by his receipt of worker's compensation benefits, stating only "the Court should declare the [sic] Mr. Dardas' right to UIM benefits necessarily and contractually limited by the provision precluding duplication of recovery as to any element of loss for which he has been or is being compensated through workers' compensation benefits." Pl.'s Mot. for Summ. J., at 15. Dardas contends this provision of the Policy does not bar his recovery because his workers' compensation carrier has entered a lien against his recovery from Stonington.

"[A]n insured's recovery under UM/UIM policies may be offset by group/program/arrangement benefits . . . at least so long as those benefits are not subject to

---

[8] The Policy limits coverage to exclude "any element of loss for which payment has been made by or for anyone who is legally responsible" or if the injured individual is "entitled to receive payment for the same elements of loss under any workers' compensation, disability, or similar law." Compl. ¶ 9.

subrogation." *Tannenbaum v. Nationwide Ins. Co.*, 992 A.2d 859 (Pa. 2010). Dardas is not entitled to double recovery for his injury. In the instant case, however, Dardas's workers' compensation carrier has entered a subrogation lien against any recovery Dardas receives from Stonington. He will not receive double recovery because he is obligated to repay the lien. His recovery under the UIM section of the Policy thus shall not be offset by his workers' compensation benefits.

**CONCLUSIONS OF LAW**

1. There was a causal connection between Dardas's injury and his use of the insured vehicle.

2. Dardas was in reasonably close geographic proximity to the insured vehicle at the time of his injury.

3. Dardas was vehicle oriented rather than highway or sidewalk oriented at the time of his injury.

4. Dardas was engaged in a transaction essential to the use of the vehicle at the time of his injury.

5. Dardas was "occupying" the Berks-Mont tow truck at the time of his injury.

6. Dardas's injury is covered by the Policy's UIM insurance section.

An appropriate order follows.